# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOHN F. ANDERSON,

   Plaintiff,

            **Case No. 2:18-cv-3625**

  v.          **Magistrate Judge Norah McCann King**

ANDREW SAUL,
Commissioner of Social Security,

   Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff James F. Anderson for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*.[1] Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] The administrative record filed with this Court, ECF No. 6, contains only an application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. R. 175–79. As Plaintiff explains, *Plaintiff's Moving Brief*, ECF No. 27, p. 1 n.1, the administrative denials reflect that Plaintiff's application was for only a Title II disability claim. *See*, *e.g.*, R. 80–84, 90–92, 11–20 (reflecting the ALJ's references to Plaintiff's claim for Disability Insurance Benefits and to the "date last insured[,]" which applies only to claims for Disability Insurance Benefits). Notably, the Commissioner in the current briefing also refers to Plaintiff's claim as one for Disability Insurance Benefits and refers to a "date last insured." *See Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 28, pp. 6, 18. Based on this record, the Court will treat Plaintiff's claim as one for Disability Insurance Benefits.

1

## I.      PROCEDURAL HISTORY

On September 30, 2014, Plaintiff filed an application for benefits, alleging that he has

been disabled since July 1, 2009. R. 175−79. Plaintiff's application was denied initially and upon

reconsideration. R. 80−84, 90−92. Plaintiff sought a *de novo* hearing before an administrative

law judge. R. 94−95. Administrative Law Judge Peter R. Lee ("ALJ") held a hearing on May 22,

2017, at which Plaintiff, who was represented by counsel, appeared and testified, as did a

vocational expert. R. 25−55. In a decision dated July 31, 2017, the ALJ concluded that Plaintiff

was not disabled within the meaning of the Social Security Act at any time from July 1, 2009, the

alleged disability onset date, through December 31, 2014, the date on which Plaintiff was last

insured. R. 11−24. That decision became the final decision of the Commissioner of Social

Security when the Appeals Council declined review on January 18, 2018. R. 1−5. Plaintiff timely

filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 3, 2018, Plaintiff

consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C.

§ 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.[2] On March 11, 2020,

the case was reassigned to the undersigned. ECF No. 29. The matter is now ripe for disposition.

## II.      LEGAL STANDARD

### A.      Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review."  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice."  *Cotter*, 650 F.2d at 482.  Absent such articulation, the Court

"cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As

the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the
> weight [s/]he has given to obviously probative exhibits, to say that [the] decision
> is supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can

enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award

benefits should be made only when the administrative record of the case has been fully

developed and when substantial evidence on the record as a whole indicates that the claimant is

disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation

omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to

support an award of benefits, courts take a more liberal approach when the claimant has already

faced long processing delays. *See, e.g., Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An

award is "especially appropriate when "further administrative proceedings would simply prolong

5

[Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   THE ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 50 years old on his date last insured. R. 19.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any time from his alleged disability onset date of July 1, 2009, through December 31, 2014, his date last insured. R. 13.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease, foot fracture, gastroesophageal reflux disease (GERO), neuropathy, radiculopathy, right kneecap fracture, obesity, affective disorder, and anxiety. *Id*. The ALJ also found that the diagnosed impairment of hyperlipidemia was not severe. R. 14.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 14−15.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 15−19. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a construction worker and construction

7

supervisor. R. 19.

At step five, the ALJ found that a significant number of jobs−*i.e*., approximately 30,000 jobs as a weld inspector; approximately 150,00 jobs as a labeler; approximately 100,000 jobs as an inspector/packer−existed in the  national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 20. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from July 1, 2009, his alleged disability onset date, through December 31, 2014, the date on which he was last insured. R. 20.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 27. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 28.

## IV.   DISCUSSION

### A.   Step Three

Plaintiff raises several challenges to the ALJ's analysis at step three of the sequential evaluation. *Plaintiff's Moving Brief*, ECF No. 27, pp. 14−24.

At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or equals the severity of one of the impairments in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those

criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id.*

At step three, the ALJ specifically considered the Listings of "1.00 Musculoskeletal System, 4.00 Cardiovascular System, 5.00 Digestive System, 11.00 Neurological, and 12.00 Mental Disorders of the listed impairments. Additionally, SSR 02-lp Obesity was adequately considered, both singularly and in combination with the claimant's underlying impairments." R. 14. Plaintiff argues that the ALJ erred by failing to meaningfully evaluate Plaintiff's obesity at step three and at subsequent steps in accordance with SSR 02-1p. *Plaintiff's Moving Brief*, ECF No. 27, at 14–24. Plaintiff specifically complains that the ALJ failed to consider obesity in combination with other impairments, and identified no listing or its elements. *Plaintiff's Moving*

*Brief*, ECF No. 27, p. 21–22. Plaintiff further argues that the ALJ failed to consider in combination Plaintiff's cervical and lumbar disease, spinal canal stenosis, gastric ulcers, GERD, and gallbladder removal. *Plaintiff's Moving Brief*, ECF No. 27, p. 22. Plaintiff's arguments are not well taken.

Although obesity was removed as a "listed impairment" in 1999, the Court of Appeals for the Third Circuit has recognized that this removal "did not eliminate obesity as a cause of disability." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009) (citing SSR 00–3p, 65 Fed. Reg. 31039, 31040–42 (May 15, 2000)). "To the contrary, the Commissioner promulgated SSR 00-3p, indicating how obesity is to be considered. This SSR replaced an automatic designation of obesity as a listed impairment, based on a claimant's height and weight, with an individualized inquiry, focused on the combined effect of obesity and other severe impairments afflicting the claimant[.]" *Id.* "Although SSR 00-3p was superseded by SSR 02-1p, 67 Fed. Reg. 57859, 57859 (Sept. 12, 2002), SSR 02-1p did not materially amend SSR 00-3p." *Id.* (citations omitted); *see also* SSR 00-3p, 65 Fed. Reg. 31039-01 (May 15, 2000) ("[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a Listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.").

SSR 02-1p provides in relevant part as follows:

[W]e consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

. . . .

Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.

For example, when evaluating impairments under mental disorder listings 12.05C, 112.05D, or 112.05F, obesity that is "severe," . . . satisfies the criteria in listing 12.05C for a physical impairment imposing an additional and significant work-related limitation of function and in listings 112.05D and 112.05F for a physical impairment imposing an additional and significant limitation of function. . . .

We may also find that obesity, by itself, is medically equivalent to a listed impairment. . . . For example, if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence. . . .

We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment. For example, obesity affects the cardiovascular and respiratory systems because of the increased workload the additional body mass places on these systems. Obesity makes it harder for the chest and lungs to expand. This means that the respiratory system must work harder to provide needed oxygen. This in turn makes the heart work harder to pump blood to carry oxygen to the body. Because the body is working harder at rest, its ability to perform additional work is less than would otherwise be expected. Thus, we may find that the combination of a pulmonary or cardiovascular impairment and obesity has signs, symptoms, and laboratory findings that are of equal medical significance to one of the respiratory or cardiovascular listings. [Footnote omitted.]

However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

SSR 02-1p, 67 Fed. Reg. 57859-02. Accordingly, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with h[is] impairments, on h[is] workplace function at step three and at every subsequent step." *Diaz*, 577 F.3d at 504. "For meaningful judicial review, the ALJ must provide a discussion of the evidence and an explanation of reasoning, . . . but we do not 'require the ALJ to use particular language or adhere to a particular format in conducting his analysis[.]'" *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765–66 (3d Cir. 2016)  (quoting *Jones*, 364 F.3d at 505). However, "[c]onclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient." *Diaz*, 577 F.3d at 504.

Here, the ALJ identified obesity as one of Plaintiff's severe impairments at step two. R. 13. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment, noting, *inter alia*, that "[n]o treating, examining, or non-examining medical source has mentioned findings or rendered an opinion that the claimant's impairments, singly or in combination, medically equaled the criteria of any listed impairment." R. 14. In so finding, the ALJ expressly stated that he evaluated Plaintiff's obesity, both singularly and in combination with Plaintiff's underlying impairments, pursuant to the guidelines set forth in SSR 02-1p. *Id*. The ALJ also expressly stated that he specifically considered sections of the listed impairments relating to, *inter alia*, musculoskeletal, cardiovascular issues,[3] and mental issues. *Id*. As noted above, SSR 02-1p

---

[3] Plaintiff complains that the ALJ considered section 4.00, addressing the cardiovascular system, of the listed impairments even though Plaintiff had no cardiovascular abnormalities. *See Plaintiff's Moving Brief*, ECF No. 27, p. 22. However, SSR 02-1p explicitly provides that "obesity affects the cardiovascular and respiratory systems because of the increased workload the additional body mass places on these systems." It was therefore not improper for the ALJ, in his step three analysis, to consider whether Plaintiff's obesity impacted his cardiovascular system. *Id*.

expressly observes that these conditions may be impacted by a claimant's obesity. *Lindemeyer v. Saul*, No. CV 19-8781, 2020 WL 3397287, at *9 (D.N.J. June 19, 2020) ("To be clear, the Court does not hold that an ALJ adheres to the obligations under the pertinent regulations, if he or she merely indicates that a claimant's impairments have been considered together or in combination. Rather, a court should give credit to such statements when the ALJ renders a decision, such as the one here, that allows for a meaningful judicial review, on the basis of having provided a sufficient explanation of the medical record evidence, and the reasoning behind the ALJ's determinations."); *Gainey v. Astrue*, No. 10-1912, 2011 WL 1560865, at *12 (D.N.J. Apr. 25, 2011) ("[W]here the ALJ has indicated that the impairments have been considered in combination, there is 'no reason not to believe' that the ALJ did so.") (quoting *Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3rd Cir. 2008)); *see also* R. 14–15 (considering Plaintiff's mental impairments in detail and finding that those impairments do not meet or medically equal Listings 12.04 or 12.06).

At step four, the ALJ further detailed Plaintiff's musculoskeletal impairments and treatment, noting records that reflected, *inter alia*, normal grasp, no point tenderness to the neck, normal cervical range of motion as well as notes that indicated that Plaintiff's functioning remained stable. R. 16–17. The ALJ also considered Plaintiff's digestive issues, noting records that reflected conservative treatment for GERD beginning in 2009 and for gastritis, gastric ulcers, mild esophagitis, and internal hemorrhoids as of 2010. R. 17. The ALJ further noted that Plaintiff was seen in September 2012 for abdominal pain, was diagnosed with cholecystitis (inflammation of the gall bladder) and underwent laparoscopic cholecystectomy (surgical removal of the gall bladder) that same month. *Id*.; *see also* R. 17 (considering, *inter alia*, Plaintiff's foot and back as well as his diagnoses of radiculopathy and neuropathy), 17–18

13

(giving "significant weight" at step four to state agency medical and psychiatric consultants who determined that Plaintiff's obesity was severe but that Plaintiff was not disabled and was capable of light work (citing Exhibits 1A through 4A, R. 56−79)), 38 (reflecting the ALJ's questioning of Plaintiff at the administrative hearing about his weight and Plaintiff's responsive testimony), 42 (reflecting Plaintiff 's hearing testimony about his weight loss), 45 (reflecting Plaintiff's hearing testimony that his cholesterol levels had gone down since losing weight).

In short, considering the opinion as a whole, *see Jones*, 364 F.3d at 505, the ALJ properly considered Plaintiff's obesity at step three and at subsequent steps when he recognized Plaintiff's obesity as a severe impairment, recognized that he must consider the effect of Plaintiff's obesity on his other impairments, found that none of Plaintiff's impairments, whether considered singly or in combination, met or equaled a listed impairment, and specifically and in detail considered Plaintiff's musculoskeletal impairment−and the limitations imposed by that impairment−in determining Plaintiff's RFC. The ALJ expressly found, after engaging in that analysis, that Plaintiff's impairments did not preclude the performance of substantial gainful employment prior to the lapse of his insured status on December 31, 2014. R. 13−20; *see also Diaz*, 577 F.3d at 504; *Woodson*, 661 F. App'x at 765–66; SSR 02-1p. Notably, Plaintiff has not identified any medical evidence that his obesity imposes greater limitations than those found by the ALJ. *See generally Plaintiff's Moving Brief*, ECF No. 27, pp. 14−21.[4]

Based on this record, this Court is not persuaded by Plaintiff's generalized assertions that the ALJ failed to consider his impairments in combination and failed to properly consider obesity in accordance with SSR 02-1p, thus requiring remand on this issue. *See Carter v. Comm'r Soc. Sec.*, 805 F. App'x 140, 142–43 (3d Cir. 2020) ("[R]emand to reconsider her combined

---

[4] The Court considers the RFC determination in more detail in the next section.

impairments is not required because [the claimant] has relied on the language of SSR 02-1p stating that obesity *can* impair one's ability to perform basic work activities rather than specifying *how* her obesity or headaches affected her ability to perform basic work activities. Indeed, [the claimant] does not point to any medical evidence that her impairments, determinable or not, limit her ability to perform work activities.") (emphasis in original); *Woodson*, 661 F. App'x at 765 ("Woodson simply speculates about how his obesity might exacerbate other impairments—his back disorder, complaints of pain, arthritic knees, congestive heart failure, asthma attacks, or sleep apnea . . . . But Woodson never points to specific medical evidence in the record to demonstrate that his obesity, in combination with other impairments, is sufficiently disabling. Instead, the evidence before the ALJ suggests otherwise."); *Vargas v. Colvin*, No. CV 15-2502, 2017 WL 123436, at *5 (D.N.J. Jan. 11, 2017) (affirming denial of benefits where, *inter alia*, "[a]lthough [the ALJ's] analysis is rather brief, it is appropriate given the absence of any medical evidence in the record indicating that Mr. Vargas's obesity has affected his functioning in any way. Further, Vargas points to none."); *Jones v. Colvin*, No. CV 14-6778, 2016 WL 7338528, at *6 (D.N.J. Dec. 19, 2016) ("Here, ALJ O'Leary considered Plaintiff's obesity both individually and in combination with his other impairments. Plaintiff points to no evidence in the record to illustrate that the ALJ failed to appropriately consider obesity."). The Court therefore finds that the ALJ's discussion of Plaintiff's obesity is sufficient and permits meaningful judicial review. *See Diaz*, 577 F.3d at 504; *Woodson*, 661 F. App'x at 765–66; SSR 02-1p.

B.      **Step Four**

Plaintiff also argues that substantial evidence does not support the ALJ's RFC

determination that he was capable of a limited range of light work. *Plaintiff's Moving Brief*, ECF

No. 27, pp. 24–38. A claimant's RFC is the most that the claimant can do despite his limitations.

20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, an ALJ is charged with

determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler*

*v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining

physicians or State agency consultants—must make the ultimate disability and RFC

determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has a duty to

consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only

"credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak v. Colvin*, 777

F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to exclude from the RFC "a

limitation [that] is supported by medical evidence, but is opposed by other evidence in the

record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for

an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation

that is not supported by any medical evidence if the ALJ finds the impairment otherwise

credible").

Here, the ALJ determined that Plaintiff had the RFC to perform light work with certain

additional limitations:

> After careful consideration of the entire record, I find that, through the date last
> insured, the claimant had the residual functional capacity to perform a wide range
> of light work. The claimant could lift and/or carry and push and/or pull up to 10
> pounds frequently and 20 pounds occasionally. Further, he could sit for up to 6
> hours in an 8-hour workday and stand and/or walk for up to 6 hours in an 8-hour
> workday. However, the claimant could never climb ropes, ladders, or scaffolds and
> never crawl, but could occasionally climb stairs and ramps, stoop, and crouch. In
> addition, he could never be exposed to unprotected heights or hazardous machinery.

He could perform frequent handling. Finally, the claimant could perform simple and repetitive tasks.

R. 15. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, medical records reflecting Plaintiff's normal grasp, no point tenderness to the neck, normal cervical range of motion as well as notes that indicated that Plaintiff's functioning remained stable, R. 16–17; little evidence of specific treatment for complaints of low back pain, R. 17; Plaintiff's foot pain and diagnoses of stress fracture, radiculopathy, and neuropathy, *id.*; digestive impairments that were treated conservatively beginning in 2009 and laparoscopic cholecystectomy in September 2012, *id.*; and state agency medical and psychiatric consultants who determined that Plaintiff was not disabled and was capable of light work, R. 17–18 (citing Exhibits 1A through 4A, R. 56–79)). The record unquestionably contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff argues, however, that the RFC lacks substantial evidence for a number of reasons. *Plaintiff's Moving Brief*, ECF No. 27, pp. 24–38. For example, Plaintiff complains that "[t]reating podiatrist Demarzo, who believes plaintiff incapable of standing and walking due to his neuropathy, radiculopathy and joint fractures, was rejected by the ALJ." *Id.* at 29. Plaintiff does not provide any citation to the record for this conclusory assertion, *see id.*, and the Court has no obligation to search through the record to locate evidence or flesh out his argument. *See Atkins v. Comm'r Soc. Sec.*, No. 19-2031, 2020 WL 1970531, at *4 (3d Cir. Apr. 24, 2020) ("'[J]udges are not like pigs, hunting for truffles buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (internal citation omitted)); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the

17

facts that support their arguments.").

In any event, the Court finds that the ALJ properly considered the opinions of Eugene

Demarzo, D.P.M. On May 16, 2014, Dr. Demarzo opined, *inter alia*, as follows:

> Patient was advised that the radiculopathy/neuropathy is a serious problem and can
> lead to more serious injury if it goes on treated [sic]. Patient states that he has
> recently been treating with a neurologist or orthopedic [sic] and has recent MRIs
> which show six herniated disc's [sic]. Patient is under evaluation and a treatment
> plan will be outlined. Patient is not working at this time and has been advised not
> to work due to the danger that is presented by his neuropathy/radiculopathy.

R. 387. On November 7, 2014, Dr. Demarzo stated: "Patient was advised that he is right and [sic]

not working because he is a danger to both himself and any other employee that he works with

due to the neuropathy and radiculopathy that he experiences. If this condition is not treatable

then I would consider this patient permanently disabled." R. 398. The ALJ considered these

opinions as follows:

> As for the opinion evidence, in May 2014, Eugene Demarzo, DPM noted that the
> claimant had been advised not to work due to the danger that was presented by his
> neuropathy/radiculopathy (Exhibit 6F, page 12). Dr. Demarzo later indicated that
> the claimant was permanently disabled (Exhibit 6F, page 23). These opinions are
> given little weight because they are vague and fail to offer any specific work related
> functional limitations linked to the claimant's impairments.

R. 17. The Court finds no error in the ALJ's decision to assign little weight to these opinions. *See*

*Louis v. Comm'r Soc. Sec*., 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not Louis can

perform occupational duties is a legal determination reserved for the Commissioner.") (citing 20

C.F.R. § 404.1527(d)); *See Kerdman v. Comm'r of Soc. Sec*., 607 F. App'x 141, 144 (3d Cir.

2015) ("[S]ubstantial evidence supports the ALJ's conclusion that Dr. Frank's opinion was not

well-supported, as Dr. Frank failed to reference any objective medical evidence supporting his

statements of disability or articulate any specific functional limitations suffered by [the

claimant]."); *Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) ("[T]he ALJ

was not obligated to give significant weight to Dr. Kumar's opinion as to Zonak's ability to work because the opinion related to the ultimate issue of disability—an issue reserved exclusively to the Commissioner."); *Nixon v. Comm'r of Soc. Sec.*, No. CV 18-1631, 2019 WL 4748058, at *1 (W.D. Pa. Sept. 30, 2019) ("Thus, as Dr. Tran's opinion did not include specific functional limitations and merely opined as to Plaintiff's limited employability, the Court finds that the ALJ did not err in giving little weight to that opinion in his analysis.").

Plaintiff also contends that the ALJ improperly "rejected" the third party witness statement of Loretta Wheeler, Plaintiff's girlfriend. *Plaintiff's Moving Brief*, ECF No. 27, pp. 29–30. Plaintiff's argument is not well taken. As a preliminary matter, Plaintiff does not provide any citation to the record for his assertion that Ms. Wheeler stated that Plaintiff "couldn't stand for even a half an hour and needed help out of bed and taking care of his personal hygiene." *Id*. at 29 (citing only R. 18, which reflects the ALJ's evaluation of Ms. Wheeler's statement without specifying these details). As previously noted, the Court need not search through the record or compile evidence for Plaintiff. *See Atkins*, 2020 WL 1970531, at *4; *Claxton*, 766 F.3d at 307.

In any event, the ALJ did not "reject" Ms. Wheeler's Third Party Function Report dated October 8, 2014, R. 227–34, as Plaintiff contends, but instead assigned it "some weight," reasoning as follows: "This lay statement has been duly considered in accordance with 20 CFR 404.1527(f) and is given some weight. However, as Ms. Wheeler is a close friend of the claimant, it is expected for her to advocate on his behalf. Thus, her statement cannot be considered wholly objective." R. 18. Plaintiff contends that the ALJ improperly discounted Ms. Wheeler's statement because she was "'too friendly' to be believed[.]" *Plaintiff's Moving Brief*, ECF No. 27, p. 29. However, under SSR 06-03p, which was in effect at the time of Plaintiff's claim and was applicable to claims filed before March 27, 2017, an ALJ may consider factors

such as "the nature and extent of the relationship" when evaluating evidence from "other nonmedical sources," such as spouses and friends.

Moreover, even if the ALJ erred in his evaluation of Ms. Wheeler's statement, any such error was harmless. *See Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) ("An error is 'harmless' when, despite the technical correctness of an appellant's legal contention, there is also 'no set of facts' upon which the appellant could recover.") (citation omitted). Plaintiff asserts that Ms. Wheeler stated that "plaintiff couldn't stand for even a half an hour and needed help out of bed and taking care of his personal hygiene[.]" *Plaintiff's Moving Brief*, ECF No. 27, p. 29.[5] However, to the extent that Ms. Wheeler's statement echoes Plaintiff's statements about his limitations, the ALJ specifically considered those statements and explained why these were not consistent with the record as a whole. R. 18, 227–34. Finally, Ms. Wheeler's statement about the extent of Plaintiff's limitations is inconsistent with some of Plaintiff's own statements about his ability to perform activities of daily living, such as driving and riding in a car, traveling on his own, performing his own weekly grocery shopping, and walking for about twenty minutes before needing to rest. R. 18; *see also* SSR 06-03p (identifying as one factor to consider in assessing nonmedical source evidence how consistent the opinion is with other evidence); *Seewagen v. Comm'r of Soc. Sec.*, No. 1:18-CV-01818, 2019 WL 1568277, at *6–8 (D.N.J. Apr. 10, 2019) ("The ALJ also properly addressed two other factors – how long the source has known and how frequently the source has seen the individual as well as how consistent the opinion is with other

---

[5] Although Plaintiff contends that "there is no excuse to refuse to even recite the statements that are being rejected[,]" *id.* at 29–30, it was not reversible error for the ALJ to fail to repeat the details of Ms. Wheeler's statement. *See Gunn v. Comm'r of Soc. Sec.*, No. 1:16-CV-05313, 2017 WL 4786558, at *7 (D.N.J. Oct. 24, 2017) ("Even though the ALJ did not restate every detail related by Plaintiff's husband and mother, the ALJ was not required to do so, and he satisfied his burden of showing that he considered their testimony and articulated the weight he was affording their testimony.") (citing *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014)).

evidence – in providing some weight to [the claimant's wife's] testimony.").

Plaintiff next asserts that "it should be abundantly clear that plaintiff cannot tolerate being on his feet long enough to sustain a 40 hour week performing light work activity" due to "the mountain of evidence from spinal canal stenosis to foot and knee fractures to lumbar and cervical disc disease to exogenous obesity[.]" *Plaintiff's Moving Brief*, ECF No. 27, p. 30; *see also id*. at 31. However, Plaintiff provides no citation to the record for this conclusory argument. *See id*.; *see also Atkins*, 2020 WL 1970531, at *4; *Wright v. Comm'r Soc. Sec*., 783 F. App'x 243, 245 (3d Cir. 2019) ("We need not address this conclusory, undeveloped accusation.") (citations omitted); *Claxton*, 766 F.3d at 307. In any event, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec*., 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Plaintiff does not identify any specific limitations flowing from these impairments that are different or more restrictive than those already found by the ALJ. Therefore, Plaintiff's unsupported and conclusory assertion in this regard does not undermine the ALJ's RFC determination. *See Rutherford*, 399 F.3d at 554 (stating that the ALJ is required to include in the RFC only "credibly established" limitations, *i.e.*, limitations "that are medically supported and otherwise uncontroverted in the record").

Finally, Plaintiff challenges the ALJ's consideration of his subjective complaints. *Plaintiff's Moving Brief*, ECF No. 27, pp. 31–37. "Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec*., 719 F. App'x 130,

21

134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must

corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec*., 272 F. App'x

196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, the ALJ must follow a

two-step process in evaluating a claimant's subjective complaints. S.S.R. 16-3p, 2016 WL

1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying

medically determinable physical or mental impairment(s) that could reasonably be expected to

produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or

mental impairment(s) that could reasonably be expected to produce an individual's symptoms is

established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine

the extent to which the symptoms limit an individual's ability to perform work-related

activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of

the intensity and persistence of the pain or symptom and the extent to which it affects the ability

to work] obviously requires the ALJ to determine the extent to which a claimant is accurately

stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. §

404.1529(c)). In making this evaluation, the ALJ considers objective medical evidence as well as

other evidence relevant to a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the

following factors to consider: daily activities; the location, duration, frequency, and intensity of

pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness,

and side effects of any medication you take or have taken to alleviate pain or other symptoms;

treatment, other than medication, currently received or have received for relief of pain or other

symptoms; any measures currently used or have used to relieve pain or other symptoms; and

other factors concerning your functional limitations and restrictions due to pain or other

symptoms).

Finally, "[t]he ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[6]

Here, the ALJ followed this two-step evaluation process. The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged by Plaintiff, but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 16. As previously discussed, the ALJ went on to detail years of record evidence and hearing testimony. R. 16–18. After considering this evidence, the ALJ specifically assessed Plaintiff's subjective complaints, explaining as follows:

> Factors relevant to the claimant's symptom-related allegations that I have considered include the objective medical evidence, longitudinal medical history, medical opinions and observations by treating and non-treating sources, and non-examining medical source opinions. Additional factors include the claimant's daily activities, the location, duration, frequency, and intensity of the reported symptoms, the precipitating and aggravating factors, and the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate symptoms. Furthermore, I have also considered any other treatment the claimant may have received for relief of the reported symptoms, any other measures currently or previously used to relieve symptoms, and other factors concerning the claimant's functional limitations and restrictions allegedly caused by these symptoms.

[6] SSR 16-3p superseded SSR 96-7p on March 26, 2016, to eliminate the use of the term "credibility." SSR 16-3p. However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

Additional factors considered are the consistency of the claimant's statements as compared to the objective medical evidence and other information from medical sources, as well as observations from non-medical persons such as family, friends, public and private agencies, SSA employees, and adjudicators. The claimant's work history is also a consideration (See 20 CFR 404.1529 and 416.929).

In evaluating the claimant's symptoms under these factors, there are several reasons why the claimant's allegations of debilitating symptoms cannot be considered entirely credible. First, the claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Notably, despite the alleged impairments, he reported that he was able to drive and ride in a car, travel on his own, and perform his own weekly grocery shopping (Exhibit 5E). Further, he indicated that he could walk for about 20 minutes before needing to rest for 5 to 10 minutes (Exhibit 5E). An ability to engage in such activities is inconsistent with total disability.

Second, although the claimant received treatment for the allegedly disabling impairments, that treatment was essentially routine and/or conservative in nature. Notably, the claimant's treatment consisted largely of medication management, which offered adequate control of the alleged symptoms.

Third, while there is opinion evidence suggesting that the claimant was disabled, it is not adequately supported by the record as outlined above.

Fourth, the claimant did not exhibit debilitating symptoms while testifying at the hearing. While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of functioning on a day-to-day basis, the apparent lack of debilitating symptoms during the hearing is given some slight weight under the guidance of Social Security Administration regulations in reaching a conclusion regarding the claimant's alleged symptoms and maximum residual functional capacity.

R. 18–19.

Plaintiff attacks each of the ALJ's four proffered reasons for partially discounting Plaintiff's subjective complaints. *Plaintiff's Moving Brief*, ECF No. 27, pp. 34–37. First, Plaintiff contends that his testimony upon which the ALJ relies regarding Plaintiff's ability to walk for 20 minutes before needing to rest for 5 or 10 minutes undermines a finding that he could perform light work, which requires that a person be able to stand and walk for 6 to 8 hours in an 8-hour day. *Id.* at 34–35. This Court disagrees. As set forth above, this testimony was but

24

one example of the daily activities that the ALJ properly considered when concluding that Plaintiff's allegations of debilitating symptoms were not entirely credible. R. 18 (considering other daily activities such as ability to drive and ride in a car, travel on his own, and perform his own grocery shopping); *see also* 20 C.F.R. § 404.1529(c)(3)(i). Moreover, the ALJ simply referred to the testimony about Plaintiff's ability to walk for 20 minutes as evidence that was "inconsistent with total disability." *Id.* The ALJ previously explained that he gave "significant weight" to the state agency doctors, R. 17, who found, *inter alia*, that Plaintiff could stand and/or walk for about 6 hours in an 8-hour workday and was capable of light work. R. 63, 65, 76, 78. Reading the decision as a whole, *see Jones*, 364 F.3d at 505, substantial evidence supports the ALJ's consideration of Plaintiff's subjective complaints in this regard as well as the RFC for light work.

Second, Plaintiff contends that the ALJ erred in discounting, in part, his subjective statements because his treatment "'was essentially routine and/or conservative in nature.'" *Plaintiff's Moving Brief*, ECF No. 27, p. 35 (quoting R. 18). In support, Plaintiff initially argues that "[t]he ALJ does not specify what treatment would have constituted a more acceptable avenue[.]" *Id.* However, the ALJ properly considered Plaintiff's routine and/or conservative treatment when assessing his subjective complaints. *See* 20 C.F.R. § 404.1529(c)(3)(v); *Phillips v. Barnhart*, 91 F. App'x 775, 782 (3d Cir. 2004) (considering the claimant's conservative treatment history as a factor that supported the ALJ's determination to discount the claimant's subjective complaints). Moreover, Plaintiff cites no authority for his assertion that the ALJ should have specified "a more acceptable" method of treatment. *See Plaintiff's Moving Brief*, ECF No. 27, p. 35; *cf. Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) ("The claimant bears the burden of proof at steps one through four, and the Commissioner bears the

burden of proof at step five.") (citations omitted). Plaintiff further contends that he "had to wear a pneumatic cast 24 hours per day and had his gallbladder surgically removed. There is no surgical 'fix' for spinal stenosis and multi-level disc disease." *Plaintiff's Moving Brief*, ECF No. 27, p. 35. However, Plaintiff cites to no record evidence that supports his apparent assertion that these impairments require different or more restricted limitations than those found by the ALJ, nor does he identify what those limitations should be, or otherwise explain how remanding this action would necessarily lead to a different RFC determination. *See Plaintiff's Moving Brief*, ECF No. 27, p. 35; *see also see also Atkins*, 2020 WL 1970531, at *4; *Claxton*, 766 F.3d at 307. The Court will not guess at Plaintiff's meaning or construct arguments for him. *Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."). Moreover, as previously noted, a mere diagnosis does not establish disability and entitlement to benefits. *Foley*, 349 F. App'x at 808; *Phillips*, 91 F. App'x at 780.

Third, Plaintiff complains that the ALJ does not explain what part of the record fails to adequately support opinion evidence suggesting that Plaintiff was disabled. *Plaintiff's Moving Brief*, ECF No. 27, p. 35. However, as discussed earlier, the ALJ specifically considered Dr. Demarzo's opinions that Plaintiff should not work and that he was permanently disabled. R. 17. For the reasons previously discussed, substantial evidence supports the ALJ's consideration of these opinions. Plaintiff goes on to argue that "the ALJ seems to confuse total disability in general with a finding of disability in this case. In this case, a finding that plaintiff could sustain

sedentary work for 8 hours per day, every day, would result in a directed finding of disability." *Plaintiff's Moving Brief*, ECF No. 27, p. 35. Plaintiff, however, provides no evidence for his conclusory assertion that he is limited to sedentary work. *See id*. Moreover, as detailed above, the ALJ's RFC determination for light work is supported by substantial evidence.

Finally, Plaintiff contends that the ALJ erred in discounting his subjective complaints by relying on observations of Plaintiff's demeanor during a short administrative hearing. *Plaintiff's Moving Brief*, ECF No. 27, pp. 35−37 (arguing that courts have rejected "sit and squirm observations"). Here, however, the ALJ's observation at the hearing was but one of a number of factors that the ALJ took into account in assessing Plaintiff's subjective complaints and crafting the RFC determination. R. 76−78; *cf. Holley v. Colvin*, 975 F. Supp. 2d 467, 480–81 (D.N.J. 2013), *aff'd sub nom. Holley v. Comm'r of Soc. Sec*., 590 F. App'x 167 (3d Cir. 2014) (finding no error in the ALJ's consideration of the plaintiff's ability to sit through a 65-minute hearing where the ALJ's observations did not serve as the "sole basis" for his assessment of the plaintiff's subjective complaints); *Guyer v. Saul*, No. 3:18-CV-01931, 2020 WL 497286, at *10 (M.D. Pa. Jan. 15, 2020), *report and recommendation adopted*, No. 3:18CV1931, 2020 WL 504658 (M.D. Pa. Jan. 30, 2020) (finding that the RFC assessment was supported by substantial evidence where the ALJ considered, *inter alia*, his own observation at the hearing which undermined the claimant's assertions of a need to change positions every couple of minutes while sitting); *Torres v. Comm'r of Soc. Sec*., No. 1:17-CV-00843, 2018 WL 1251630, at *8 (D.N.J. Mar. 12, 2018) ("This is not the case where the ALJ substituted her own lay observations for that of the medical evidence. Plaintiff's demeanor at the hearing was only one factor in the ALJ's comprehensive examination of the evidence in the record, and it was only noted in reference to the ALJ's assessment of Plaintiff's subjective testimony regarding her pain.");

27

*Bokor v. Comm'r of Soc. Sec.*, No. CIV.A. 10-5880, 2012 WL 254130, at *10 (D.N.J. Jan. 27,

2012), *aff'd*, 508 F. App'x 186 (3d Cir. 2012) (finding that the ALJ provided a clear and

satisfactory explanation of the basis of the RFC when "he adequately justified his decision to

give little credence to the 'conclusory statements' contained therein by stating that they were not

corroborated by the clinical evidence of record and were inconsistent with his personal

observations of Plaintiff at the hearing").

In short, the Court concludes that the ALJ's RFC determination is consistent with the

record evidence and enjoys substantial support in the record.

## V.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  December 9, 2020                         *s/Norah McCann King*
                                                 NORAH McCANN KING
                                          UNITED STATES MAGISTRATE JUDGE